IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

KITTY GRAHAM )
 )
   Plaintiff, )
 )
v. ) 2:06-CV-00270-WKW
 )
COLONIAL BANK, et al., )
 )
   Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Kitty Graham to respectfully submit this memorandum of law in support of her response in opposition to Defendants, The Colonial Bancgroup, Inc. and Colonial Bank, N.A.'s Motion for Summary Judgment. For the reasons set out below, the Court should deny Defendants' Motion for Summary Judgment against Plaintiff.

**SUMMARY OF ARGUMENT**

This case is before the court on a motion for summary judgment filed by Colonial Bank, N.A., et.al. Plaintiff alleges the defendants discriminated against her on the basis of age and gender in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. On January 18, 2005, without any forewarning, defendants informed plaintiff that her employment would terminate effective this date. In the written Separation Agreement (Exhibit C) no reason was given for this termination, however; verbally, in the exit interview that took place when this separation agreement was given to plaintiff, Linda Green, Director of Wealth Management, stated this termination was a result of reorganization or restructuring and that plaintiffs position had been eliminated (Exhibit A). Plaintiff contends that Colonial did not eliminate her position, but rather, re-titled it to Regional Sales and Development

Wholesaling Officer and promoted a younger, less experienced male, Cary Guffey, to this position (Exhibit E).

In its motion for summary judgment, defendants' contend that plaintiff will be unable to establish a *prima facie* case for discrimination under either Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act of 1967 and that 28 other positions were also eliminated as part of a comprehensive reorganization of the division. Additionally, defendants contend that Cary Guffey was promoted into a more expansive position titled Regional Sales and Development Wholesaling Officer for which defendants allege that plaintiff lacked minimum qualifications. The primary basis for the suggestion that the plaintiff lacked minimum qualifications for this position is that the position allegedly requires NASD licensing. Additionally, the defendants contend that the primary decision maker was herself a member of the protected class and therefore discrimination could not have been an issue.

The defendants proffer three reasons that plaintiff must rebut regarding why Cary Guffey was promoted to the position of Regional Sales and Development Wholesaling Officer. The plaintiff will offer satisfactory rebuttals to these three reasons. The defendants also contend that the plaintiff will be unable to establish a basis for a failure to promote claim. The plaintiff will offer a rebuttal that will establish a valid claim for failure to promote.

## NARRATIVE SUMMARY OF FACTS

A. The plaintiff alleges the defendants discriminated against her on the basis of age and gender in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The discrimination occurred when the defendants, without any forewarning, informed plaintiff that her employment would terminate effective January 18, 2005 and that her position had been eliminated. Linda

Green, Director of Wealth Management, notified all company senior management by memorandum (Exhibit E) of the same date that there was a new organizational structure in the brokerage division, a new job called Regional Sales and Development Wholesaling Officer had been established and Cary Guffey had been promoted to fill this position. The definition of this position, as outlined in Mrs. Green's memo, and the job responsibilities associated, were identical to those of the plaintiffs position that had allegedly just been eliminated. Plaintiff had been a very successful sales agent in the branch system and then very successful as a Regional Platform Director over a 5 year period and was over the age of 40. In contrast, Cary Guffey had been employed for only 2 ½ years and was 33 years old. Defendants have attempted to establish that the possession of or lack of a Series 7 or other NASD license is sufficient reason to avoid the charges of discrimination presented in this case. Notwithstanding defendants attempt to establish this, it is notable that there is no mention of any NASD or brokerage related license requirement or duty in Mrs. Green's memo announcing Guffey's promotion to Regional Sales and Development Wholesaling Officer. Defendants' attempt to establish that plaintiff was unqualified for the position Guffey was promoted into on the basis of experience and NASD licensing does not hold up for the following reasons. First, Guffey was apparently promoted into a position that required state insurance licensing which plaintiff possessed. Second, although Guffey was promoted into a position that apparently did not require the NASD licensing he had acquired, if the position qualifications had been changed to make NASD licensing a requirement, the candidate placed in the position would have been given ample time (generally 6 months) to study, attend

class and obtain the requisite license (Exhibit B). It was a well known practice to allow employees to obtain required licensing after accepting a position for which additional licensing was required. Furthermore, Linda Green was promoted into a position, Director of Wealth Management, which has significant NASD licensing requirements (Exhibit H) as well as state insurance licensing requirements. At the time of her promotion, and at the time the plaintiff was terminated, Linda Green held no license whatsoever. Defendants discriminated against plaintiff in this case by promoting a much younger, less experienced male, Cary Gufffey, into a re-titled position that was the position formerly held by the plaintiff, a female over the age of 40 and a member of the protected class. Defendants further discriminated against plaintiff by acting outside of their usual customary procedure of allowing an employee to complete required licensing within a defined time frame where additional licensing became a requirement in a given position. In Bass v. Bourd of County Commissioners, 2001 WL 169746 (11th Cir. 2001), the Court found that the fact that an employer violated its own policy and customary treatment in itself was sufficient evidence of discriminatory intent as regards that employee. If defendants' were to change position qualifiers and claim that possession of NASD licensing was a requirement, defendant would customarily set a date for which this requirement became effective and a date by which one must be in compliance with this requirement. Defendants never made NASD licensing a requirement of plaintiffs' position, nor did defendants ever advise plaintiff that her position would require NASD licensing as of a given date. Likewise, defendant never made NASD licensing a condition of plaintiffs' employment. Prior to joining the Wealth Management

Department in June 2003, plaintiff was a licensed banker in a local branch and sold insurance products and fixed annuities to branch customers. In an effort to enhance her ability to offer a broader product line, plaintiff established a personal goal to obtain her Series 6 NASD license. To facilitate this, plaintiff opened a window to sit for the NASD Series 6 exam. The window was opened in July 2002 and remained open until November 2002. Due to a series of emergency open heart surgeries in October 2002, plaintiff was unable to sit for the exam. Six months after returning to work, the plaintiff transferred out of the branch system to the Wealth Management Department to the position of Regional Platform Director. Plaintiff asserts that NASD licensing was, in fact, not a factor in the decision to promote Cary Guffey over plaintiff or other qualified employees to the position of Regional Sales and Development Wholesaling Officer. The reason for this assertion is that two of the four women, over age 40, who were terminated on the same day as the plaintiff, one of whom served as the Regional Platform Director in Florida, held NASD Series 7 licenses and had held them for a number of years. Were NASD licensing the true issue, Terri Meeves, plaintiffs' counterpart in Florida, would not have been terminated on January 18, 2005, but would have been given an opportunity to fill this alleged "new" position. Plaintiff contends that discrimination occurred when Cary Guffey was promoted into the position of Regional Sales and Development Wholesaling Officer as outlined in Mrs. Green's memo of January 18, 2005. Plaintiff will proceed with establishment of a *prima facie* case under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 as well as her failure to promote claim.

B.  In order to establish a *prima facie* case under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and a failure to promote claim, the plaintiff must establish that she was 1) in the protected group of persons between the ages of 40 and 70, 2) was subject to adverse employment action, 3) was replaced with a person outside the protected group, and 4) was qualified to do the job. Additionally, under Title VII, the plaintiff must establish that her employer treated similarly situated employees outside her classification more favorably. For her failure to promote claim, she must also establish that she applied for and was qualified for the position for which the employer was seeking applicants, she was denied the promotion and that another equally or less qualified individual outside the protected class received the promotion. Plaintiff was age 56 at the time she was terminated, therefore, the first two criteria for a *prima facie* case are established. Under ADEA, plaintiff establishes the third criteria as Cary Guffey was a 33 year old male and outside the protected class. To establish the fourth criteria under ADEA, plaintiff submits that she was well qualified to do the job of Regional Sales and Development Wholesaling Officer as defined in Mrs. Green's memo of January 18, 2005, and was, in fact, doing this job under the title of Regional Platform Director at the time of her termination. This criteria also serves to establish compliance with the third and fourth provisions under Title VII. In addition to this criteria, to establish that her employer treated similarly situated employees outside her classification more favorably under Title VII, plaintiff contends that she and Cary Guffey are similarly situated, although plaintiff has far more banking and financial services experience (25 years) than Guffey (5 years). It was a well known fact that the plaintiff was willing to

sit for the NASD Series 6 or 7 exam if it became a qualification of her job, as is indicated in the Regional Platform Trainer/Director job description (Exhibit I) but had not proceeded to take this exam as it was not a requirement of her job and the NASD frowns on "parking" of a license. "Parking" is a term used to refer to someone holding a license without using it. In her failure to promote claim, plaintiff asserts that a *prima facie* case can be established as she: 1) belongs to the protected group, 2) she was qualified for the position, 3) she was denied the promotion to the Regional Sales and Development Wholesaling Officer 4) another equally or less qualified individual outside the protected class received the promotion. To further address criteria number 2 as it addresses an employee applying for a position for which an employer was seeking applicants, plaintiff asserts that defendants did not follow customary procedure and post for bid the Regional Sales and Development Wholesaling Officer position as an open position and give the plaintiff an opportunity to apply for this position for which it was apparently seeking applicants. A Federal Appeals Court has ruled that an employee need not seek promotion in order to sustain a discrimination claim of failure to promote. (Dews v. A.B. Dick Co.), 84 Fair Empl. Prac. Cas. (BNA) 408, 2000 WL 167657 (C.A. 6 (Ohio), 2000). Part of the reasoning was that an employee would not have an opportunity to exercise his options for promotion if formal methods of application for open positions were not followed. Additionally, if an employee were required to show that he was rejected for promotion for positions that were unannounced, employers would be able to discriminate by always using informal methods and an employee would never have the opportunity to be rejected, so he would be unable to bring a claim. Similarly,

plaintiff asserts that she was unable to seek promotion into a position that was unannounced as an open position. As a result, the plaintiff was unable to be denied the promotion. Defendants' assertion that plaintiff was not qualified to perform the primary duties of the Regional Sales and Development Wholesaling Officer position, coordinating and implementing all sales programs with licensed bankers and team leaders, training, seminars, workshops and branch meetings in an effort to educate and increase sales knowledge is false as these duties are the primary duties plaintiff was performing at the time she was terminated in favor of a much younger male. The defendants' contention that the decision maker in plaintiffs' termination, Linda Green, is herself a member of the protected class does not hold as a valid defense in this discrimination case. A Federal Court of Appeals has held that the nature and intent of the behavior is what controls, not the identity of the speaker. In a racial discrimination case, Ross v. Douglas County, 234 F.3d 391, 84 Fair Empl. Prac. Cas. (BNA) 791 (8th Cir. 2000) a black corrections officer was routinely disparaged by his black supervisor by being referred to as a "black boy", etc. even after the plaintiff requested that the supervisor stop using such terms. The court held that the fact that the offending party and the victim were members of the same protected class did not change the fact that the victim was subjected to a hostile work environment on the basis of his race. The Court extended the logic of Onacle v. Sundowner Offshore Services, Inc., 523 U.s. 75, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998) which held that same-sex discrimination was possible under Title VII. The court held that discriminatory activities and comments are determined by those perceiving the activity or comment and not necessarily by the speaker. Plaintiff has established

prima facie cases in each of her discriminatory claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 as well as her failure to promote claim.

Defendants offered three reasons in their motion for summary judgment that plaintiff must rebut. *First*, defendants claim that plaintiff was not qualified for the job because she lacked NASD licensing and experience necessary to coordinate and implement sales programs with licensed bankers and team leaders. As has already been established in the plaintiffs' response opposing defendants' motion for summary judgment, Cary Guffey was promoted into the position titled Regional Sales and Development Wholesaling Officer that carried the same duties as the position formerly held by plaintiff, according to Mrs. Green's memo of January 18, 2005, and there were no apparent NASD licensing qualifications for this position. *Second*, defendants assert that Cary Guffey was more qualified for the position. Plaintiff has established in this response in opposition to defendants' motion for summary judgment that Cary Guffey was not more qualified than plaintiff for the Regional Sales and Development Wholesaling Officer position. This is evidenced by the reduced number of years he has served in the financial services industry and the fact that, prior to joining Colonial, he has never filled a position in a banking institution to sell or market insurance or brokerage products to customers of that institution, or to train licensed agents to promote sales. An understanding of the banking system, specifically branch banking, is key to training and motivating licensed bankers. Plaintiff has in excess of 25 years experience selling products in a banking institution, including insurance and annuity products, and years promoting

sales and motivating and training licensed agents to increase sales. *Third*, defendants state that Wealth Management was unprofitable due, in part, to plaintiffs inability to train and motivate Licensed Bankers to market and sell fixed annuities and insurance. Contrary to this statement, the platform and insurance programs served to carry the Wealth Management Department for much of the time between 2001 and 2004 when economic and market conditions were very unfavorable as a result of September 11, 2001 terrorist attacks and other interest rate issues that created low customer confidence levels. The success of these programs sustained the income levels of Wealth Management during these times (Exhibit K). Additionally, Colonial was ranked among the top 50 bank holding companies in income from annuity and mutual fund sales for the 1st quarter 2004. This ranking was out of 970 bank holding companies with some income (Exhibit K). Colonial was also ranked among the top 25 banks in the South in income from annuity and mutual funds or the 1st quarter 2004. This ranking was out of 343 banks and thrifts with some investment income. These rankings were published in Singer's Annuity and Funds Report (Exhibit K), a well known industry publication that is known for its contribution to establishing benchmarks among banks and financial institutions for the sale of annuities and mutual funds. Defendants' contention that plaintiff is, in some way, responsible for the percentages of licensed bankers producing at certain goal levels is unfounded as the licensed bankers were in no way accountable to the plaintiff or the Wealth Management Department. The accountability for the level of production of the licensed bankers rested with their local branch managers and regional branch administrators to whom they reported. (Exhibit B and Exhibit L) The plaintiff was

responsible for having a positive impact on sales from the licensed bankers by continually providing training and motivation and increasing awareness of Wealth Management programs, including insurance and annuities, in the branches and regions through contests and other branch/region events. Additionally, it appears defendants have based their determination of profitability on the ranking Colonial held in comparison to Huntington Investment Company. A comparison such as this would be like comparing apples and oranges for several reasons. First, in 2004, Huntington Bank was a 28 billion dollar bank in comparison to Colonial as a 17 billion dollar bank. An 11 billion dollar difference in assets is significant in determining a marketing base. Second, Huntington had over 100 NASD licensed representatives and over 700 licensed bankers in comparison to Colonial's 30 NASD licensed representatives and 350 licensed bankers. In essence, Huntington had more than twice the number of producers to generate sales so it stands to reason that there would be a significantly higher number of sales. Third, Huntington Investment Company began in 1995 to grow its platform and investment programs. The platform program at Colonial began in mid 2000. Even though Colonial's program was much younger than Huntington's, it was ranked among the top 50 banks in the country and the top 25 in the South for sales of annuities and mutual funds. This alone is a testament to the success of the programs and the profitability associated with the success. If additional clarification were needed, a review of the Financial Planning Services (Wealth Management) Financial Highlights reports for the time periods ending December 2003 and December 2004 reflect the profitability of the platform and insurance programs in comparison to the entire Wealth Management

Division. The following chart summarizes the numbers that can be reviewed in Exhibit J.

| Income Before Taxes and Management Fees | | | | | |
|---|---|---|---|---|---|
| YTD 2003 Wealth Mgmt. | YTD 2003 Platform/Ins | % By Platform/Ins. | YTD 2004 Wealth Mgmt. | YTD 2004 Platform/Ins | % By Platform/Ins. |
| $15,115,880 | $7,084,388 | 46% | $13,370,551 | $6,576,922 | 49% |

These numbers indicate that, out of 5 areas in Wealth Management reporting on the Financial Planning Services highlights report, the platform and insurance areas were responsible for 46% and 49% respectively of the income generated in the years 2003 and 2004. Plaintiff contends that, in light of these numbers, defendants' claim that poor performance in Wealth Management was, in part, due to plaintiffs' inability to train and motivate Licensed Bankers to market and sell fixed annuities and insurance is false. Clearly, plaintiff has satisfied her burden of rebutting each of defendants' proffered reasons for the actions it took against her on January 18, 2005, and has established concrete evidence in the form of specific facts that show the defendants' proffered reason is mere pretext. Finally, the plaintiff has not attempted to substitute her business judgment for that of the defendants and has not asked the Court to act as a "super-personnel" department, but rather has proven with legitimate facts that the actions of the defendants were discriminatory and a reasonable jury could reach this conclusion in review of the facts. The conclusion is that the defendants did commit age and sex discrimination against the plaintiff when she was wrongfully terminated

on January 18, 2005 in favor of promoting a much younger and less experienced male into the position of Regional Sales and Development Wholesaling Officer, a position that the plaintiff previously held with the title of Regional Platform Director.

## CONCLUSION

For the foregoing reasons, plaintiff Kitty Graham submits that this Court should deny defendants Colonial Bank, N.A., et.al., their motion for summary judgment as the pleadings filed in this action together with memorandums and attached exhibits establish the genuine issues as to material facts in this case that are triable and that warrant denial of defendants motion.

Respectfully submitted,

*/s/ Kitty Graham*
Kitty Graham, Pro Se
P. O. Box 240597
Eclectic, AL 36024

Done this the 20th day of September, 2006.

*/s/ Kitty Graham*
Kitty Graham, Pro Se
P. O. Box 240597
Eclectic, AL 36024