IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KITTY GRAHAM,                    )
                                 )
          Plaintiff,             )
                                 )
v.                               )        2:06-CV-00270-WKW-DRB
                                 )                WO
COLONIAL BANK, et al.,           )
                                 )
          Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this job discrimination action initiated *pro se* on March 24, 2006, Plaintiff Kitty Graham ("Graham") contends that Defendants, The Colonial BancGroup, Inc. and Colonial Bank, N.A. (collectively, "Colonial"), terminated her based on her age and gender. After considering all supporting and opposing submissions, the court concludes that these Defendants' **Motion for Summary Judgment,** jointly filed on August 21, 2006 (**Doc. 16**), is due to be GRANTED.[1]

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56 (c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and

---

[1]Filed herewith is a *Recommendation* for denial of Defendant BancGroup's *Motion for Summary Judgment* (Doc. 16) which is grounded solely on a contention that its workforce did no rise to the requisite level for "employer" coverage under either of the anti-discrimination statutes on which Graham relies. Like the movants (*see Mot.* at 1), the court refers to the two defendants herein collectively as "Colonial."

evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).   A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*;  *See* Fed.R.Civ.P. 56(e) and  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is  "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).   In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all  evidence in the light most favorable to the non-moving party,  and draw all reasonable inferences in the non-moving party's favor.  *See Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999).

## II.   FACTUAL BACKGROUND

Construed  most favorably to Graham, the evidentiary record discloses the following facts of primary relevance. [2]  Following banking jobs at Southtrust Bank in Anniston, Birmingham Teachers

---

[2]This essentially undisputed chronology  is  summarized from Graham's Affidavit, *Pl.'s Ex. A* ("*Graham Aff.*"); the Affidavit of Linda Green, *Defs.' Ex. A* ("*Green Aff.*"), who is Executive Vice President of the Wealth Management division of Colonial Bank; and the Affidavit of Tara Gibson, *Defs.' Ex. C*, as corrected in Doc.  24-2, filed Oct. 4, 2006 (*"Gibson Aff"*). Gibson served as Human Resources ("HR") Area Manager for Colonial's Montgomery BancGroup.  Disputed facts and additional facts of relevance are reserved for discussion of the legal claims.

Credit Union, Elmore County National Bank, Elmore County Bank, and Aliant Bank, Graham began her Colonial Bank[3] employment in August 2000, as a customer-calling officer within Colonial's retail banking operation.  In August 2003, Colonial reassigned her to the Wealth Management Division ("Wealth Management") and promoted her on September 15, 2003, to the position of Platform Annuity Agent Trainer ("Trainer").  She held one of only two such Trainer positions when in January 2005, Colonial eliminated this and "several positions within the Family Insurance section of the Wealth Management Division pursuant to a comprehensive organizational restructuring of the division."[4]  Promoted to Executive Vice-President of the Wealth Management Division when she was 53 years old, Linda Green explained the elimination of the Trainer positions held by Graham as part of a "lengthy and comprehensive process [commenced in mid-2004] of restructuring the division for the purpose of increasing revenue and profitability."[5]

---

[3]Defendants describe as follows Colonial Bank's operations:

> Colonial Bank, N.A. is a National Association with its principal place of business located in Montgomery, Alabama.  Colonial offers a broad line of retail and commercial banking products and services including checking and savings accounts, personal and commercial loans, online banking, credit card and merchant services, as well as treasury management and private banking and trust services.  Colonial employs over 4,000 employees among its more than 300 banking offices in Florida, Alabama, Georgia, Nevada, and Texas.

> (*Defs.' Mem.* at 4 *(citing* Affidavit of Linda Green, "*Green Aff.*", Ex. A at ¶ 3).

[4]*Gibson Aff.* at ¶ 3.

[5]According to Green: prior to 2005, Colonial offered "a wide array of investment products and services" through two separate sections of the Wealth Management Division: the Family Insurance Section, which "provided sales training and product support to the Licensed Bankers via the two Trainers", who included Graham; and the Product Management Section, which "was responsible for product and sales training for approximately 30 NASD licensed Financial Consultants, i.e., brokers, who, in turn, marketed and sold NASD licensed products to Colonial customers." The restructuring ultimately implemented reflected recommendations from an outside consultant's

Green, along with HR Area Manager Gibson, met with Graham, then age 57, to advise her that the restructuring-based elimination of Trainer positions necessitated her termination. Graham rejected Colonial's offer of "a severance package, including 160 hours severance pay, as well as the opportunity to reapply for other positions within Colonial", and she did not reapply for another position with Colonial.[6]

On or about January 24, 2005, Green appointed Cary Guffey ("Guffey"), a male under 40 years of age, "internally from the position of Financial Consultant" to one of two positions as "Regional Sales and Development Wholesaler." In this newly created position, Guffey assumed some of Graham's "former training duties regarding insurance and fixed-rate annuities" but unlike her former position, he became "responsible for duties requiring various NASD licenses and an extensive knowledge of NASD products." [7]

## III.  DISCUSSION

Graham's complaint alleges her claim as follows:

---

comprehensive review (*see Green Aff.* at ¶¶ 7-19)

[6]Green Aff. at ¶ 6. Graham's affidavit does not contest at all these declarations by Green about the termination meeting:

> At no time during the meeting did Ms. Graham ever inquire about the availability of another position within the Wealth Management division or within Colonial Bank. Furthermore, when Tara Gibson reviewed the terms of the proposed separation agreement with Ms. Graham, she informed her that she had the right to reapply for another open position with the company. I also informed Ms. Graham that if she successfully reapplied for another position, her termination pursuant tot he elimination of her Trainer position would not be treated by Colonial as a break in service.

> *Id.*, at 21-22.

[7]*Green Aff.* at ¶ 24.

4

On 1/18/05, without any forewarning, I was unjustly terminated and told that my job had been eliminated due to reorganization. On the same day a much younger male was promoted to a job with the same duties that I had, but with a different title. A memo was sent out to all Bank Presidents and senior management the same day announcing this promotion and outlining the job duties. Notably, the only terminations in this reorganization were four females over the age of 40 and "all" were replaced with younger males. (*Compl.*, ¶ 9).

Notwithstanding Colonial's advice that her "termination was a result of reorganization or restructuring and that plaintiff's position had been eliminated," Graham "contends that Colonial did not eliminate her position, but rather, re-titled it to Regional Sales and Development Wholesaling Officer and promoted a younger, less experienced male, Cary Guffey, to this position." (Pl.'s *Mem.* at 1). Defendants seek summary judgment because Graham "cannot establish a *prima facie* case for either claim and because she cannot show that Colonial's legitimate and nondiscriminatory reasons for its actions were a pretext to discriminate against Graham based on her age or gender." (Defs.' Mem. at 2)

After outlining generally the applicable analytical framework governing age and gender discrimination claims, the court explains that the evidentiary record of affidavits, business, and EEOC records [8] supports Defendants' contentions.

---

[8] In addition to the affidavits already referenced, *Defendants* submit the Affidavits of Carl Guffey (*Ex. I*), Sean Tesoro (*Ex. K*), Robert E. Lowder (*Ex. M*), a Supplemental Affidavit of Linda Green (*Ex. N*), and Graham's EEOC Charge Affidavit (*Ex. D*, also submitted as *Pl.'s Ex.* F); excerpts from Colonial's HR Policy Manual (*Ex. B*); Regional Sales and Development Wholesaler Job Announcement (*Ex. E*); Platform Annuity Agent Trainer Job Description (*Ex. G*, also offered as *Pl.'s Ex. I*)); August 21, 2001 Performance Evaluation & Development Plan (*Ex. H*); January 18, 2005 Separation Agreement (*Ex. I*, also submitted as *Pl.'s Ex.C* ); EEOC Dismissal and Notice of Rights Letter (Ex. F), and the EEOC Charge of Discrimination (*Ex. L*)

Graham's additional exhibits include the Affidavit of Rana Sanders, Former Executive Vice President of Wealth Management and Former President of Colonial Brokerage and Colonial Investment Services, Inc. (*Ex. B*); the Resume of Sean Tesora (*Ex. D*);

A.      Analytical framework

1.   Disparate treatment claims generally

Title VII makes it an "unlawful employment practice for an employer, *inter alia,* to discharge any individual . . .because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a).   The ADEA prohibits similar discrimination "because of such individual's age." 29 U.S.C. §623(a)(1).  On a claim of disparate  treatment under both Title VII and the ADEA,  the employee may offer direct or circumstantial evidence.   *Earley v. Champion International Corp.*, 907 F. 2d 1077 (11th Cir. 1990); *Apodaca v. Secretary of Dept. of Homeland Security*, 161 Fed. Appx. 897, 899 (11th Cir. 2006).  The latter is evaluated pursuant to the familiar burden-shifting analysis framed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and summarized cogently by United States District Judge Myron H. Thompson in a "well-reasoned memorandum opinion" so characterized when affirmed on appeal:

> [A]n employee has the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of evidence. A "*prima facie* case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" ... If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee.  This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific,

---

a January 18, 2005 Memorandum to Senior Bank Management by Linda Green (*Ex. E*); Job Description of Regional Investment Sales Representative (Financial Consultant) (Ex. G); Wealth Management Director Job Description (*Ex. H*), Financial Planning Services Financial Highlights Reports for Year End 2003 and 2004 (Ex. J); Excerpt from Singer Funds Reports on Top Bank Rankings 1st Quarter 2004 (Ex. K); Platform 2004 Business Plan Profile (Ex. K).

and worthy of credence.  The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced...Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination.  The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful discrimination.

*Hall v. Ala. Assn. of School Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003) (internal citations omitted)

The ultimate issue in a gender or age discrimination claim is whether the defendant intentionally discriminated against the plaintiff.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983).  The *McDonnell Douglas* analysis provides an invaluable method of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *Hall*, 326 F.3d at 1167 (*Mem. Op.*, Thompson, J.), *quoting Burdine*, 450 U.S. at 255, n.8

### 2.  Reduction in Force Claims

The Eleventh Circuit has adopted a variant of the *McDonnell Douglas* test for reduction-in-force ("RIF") cases grounded on circumstantial evidence.  Generally, the plaintiff in a RIF case can establish a *prima facie* case by demonstrating: (1) that she was in a protected group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact-finder might reasonably conclude that the employer intended to discriminate on the basis of the protected

characteristic in reaching the decision at issue. *Earley*, 907 F. 2d at 1082.[9]

Where a particular job is entirely eliminated for nondiscriminatory reasons, in order for the plaintiff to prevail, she must show that she was qualified for another available job with her employer. Qualification for her current position is not enough. *Earley*, 907 F. 2d 1082-83. A plaintiff's burden in a RIF case is "more demanding than the showing in a garden-variety discharge case." *Banks v. FirstCity Mortgage, Inc.*, No. 1:04-cv-1477-MHS-CCH, 2005 U.S. Dist. LEXIS 43263, at *59 (N.D. Ga. June 29, 2005), *citing Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F. 2d 565, 567 (11th Cir. 1992).

With respect to the last prong – evidence by which a factfinder might reasonably conclude that the employer intended to discriminate – "the plaintiff must produce some evidence that the employer has not treated age [or other protected characteristic] neutrally, but has instead discriminated based upon that status. The evidence must lead the factfinder reasonably to conclude either that the defendant (1) consciously refused to consider retaining or relocating a plaintiff because of her age [ ], or (2) regarded age [ ] as a negative factor in such consideration." *Rowell v. BellSouth Corp.*, 433 F. 3d 794, 798 (11th Cir. 2005) (internal citations and quotations omitted).

**B.     Evidentiary Analysis**

*1.   RIF elimination of position and discharge*

In response to Graham's claim of unlawful termination, Colonial denies that she qualified

---

[9]Because the Title VII and the ADEA legal standards are essentially the same, this analysis applies to Graham's Title VII claim of gender-based discharge as well as her ADEA claim for age-motivated discharge.

for another available position or that there is sufficient evidence for a factfinder reasonably to conclude that Colonial terminated her due to either her age or her gender. Conceding that Graham satisfies the first element of her *prima facie* case (i.e., coverage within a protected group as a female over 40), Colonial targets first her deficient showing on the second element, arguing:

> [A]bsent a showing that there was a position for which Graham was qualified at the time of her discharge, she cannot establish the second prong of her prima facie case...[A]lthough Graham does not specifically allege that she either sought or was qualified for an open position at the time of her termination, based on the totality of her Complaint, it is reasonable to assume that she claims that she was qualified for the newly-created position of Regional Sales and Development Wholesaler to which Cary Guffey was promoted in January 2005.

*Defs.' Mem*. at 29 (citations omitted)

The court likewise concludes that Graham l cannot establish her *prima facie* case because the evidence compellingly establishes that she was not qualified for the new position or any other open positions. Her unsupported declaration that Guffey merely assumed her re-titled position is refuted by materially undisputed evidence. The court has scrutinized the documented duties of both Graham's former position as a Trainer and the newly created Wholesaler position, and the parties do not dispute the records. Clearly, some but not all of Graham's duties were subsumed within the newly created position.[10]   Graham's mere conviction or opinion that *all* her duties were reassigned to Guffey in a re-labeled position cannot sustain the *prima facie* case which is her burden.  *See Minton v. American Bankers Ins. Group*, No. 02-12942, 2003 WL 21303330 (11th Cir. Feb. 6, 2003); *Edwards v. Baptist Health*, No. Civ. A. 2:04-cv-561A, 2005 WL 1331262 (M.D. Ala. June 3, 2005).

Nor can Graham establish the intentional discrimination required as the last prong of the

---

[10]Green Aff. at ¶¶19, 24, 25; Defs.' Ex. E; Defs.' Ex. G.

9

*prima facie* case.   Her evidentiary submissions raise no disputed issue warranting trial concerning Colonial's discriminatory animus in   adopting the restructuring which eliminated   her Trainer position.   *See, e.g., Minton* at *1, *citing Chapman v. AI Trans.*, 229 F. 3d 1012, 1030 (11th Cir. 2000). Graham's proffered attempt – by documenting Colonial's profitability and economic status – is insufficient to meet her burden.   "[An] employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions. It is not  [the court's] role to second-guess [the employer's] decision to respond to a loss...by cutting its workforce." *Beaver v. Rayonier, Inc.*, 200 F. 3d 723, 728 (11th Cir. 1999).[11]

Colonial's critical decisionmaker on the claims in controversy, Executive Vice-President Green, testified comprehensively regarding both the reasons she accepted the outside consultants' recommended restructuring of her Division and her basis for selecting Cary Guffey for the newly created position.   Guffey had a NASD license and experience in NASD products, unlike Graham. Like Graham, Guffey also had experience with the sale of insurance and fixed annuities.   Unlike

---

[11]*See* Green *Aff.* at ¶ 20, explaining in pertinent part:

> I recommended the elimination of Kitty Graham's position based on my good-faith business judgment that the organizational restructuring of its Wealth Management division, in conjunction with many other changes implemented by the Wealth Management division, would best further the goals of increasing efficiency, revenues and profitability.  That business judgment was not merely the product of a whim or a reshuffling of the organizational chart, but rather, it was the direct result of a lengthy and introspective process undertaken by the Wealth Management division in conjunction with Huntington, a well-respected and independent banking consultant. At no time did anyone else who participated in the restructuring process consider the age or sex of any employee in eliminating positions during the organizational restructuring.

Graham, Guffey had prior experience selling NASD products. Graham does not dispute Guffey's qualifications at all.

The court concludes that Colonial's articulated reason for Guffey's selection is clear, reasonably specific, and worthy of credence. Graham has not come forward with any evidence that she was qualified for the Wholesaler job other than her own conclusory allegations. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered...extensive evidence of legitimate, non-discriminatory reasons for its actions." *Elrod v. Sears, Roebuck & Co.*, 939 F. 2d 1466, 1473 (11th Cir. 1991) (internal citations and quotations omitted).

In sum, Colonial is correct that Graham's evidentiary submission discloses her inability "to offer any substantially probative evidence that age more likely than not motivated Colonial's decision either to eliminate her position or to appoint Guffey rather than her to the Wholesaler position."[12] Graham does highlight the termination of women over the age of 40 as a result of the reorganization, but undisputed evidence indicates that the restructuring also eliminated jobs formerly occupied by younger (under age 40) employees as well. it is also noteworthy that Green, a female over the age of 40, decided to terminate Graham's employment and also to select Guffey for the disputed new position. There is simply no probative evidence that Graham's protected characteristics– age or gender- motivated adversely the decisions made by Green, who shares these same protected characteristics. *See Elrod v. Sears, Roebuck & Co.*, 939 F. 2d 1466 (11th Cir. 1991).

Assuming *arguendo* that Graham's showing for a *prima facie* case sufficiently creates a disputed

---

[12]*Defs.' Br.* at 33.

issue of fact, summary judgment would nonetheless be warranted for her failure to demonstrate pretext in Colonial's stated reason for its decision.    Colonial has articulated a legitimate nondiscriminatory reason for its decision to terminate Graham and its subsequent decision to hire Guffey for the Wholesaler position.    Graham's evidentiary submissions are insufficient to demonstrate any discriminatory intent underlying Colonial's decision to eliminate her position as a result of reorganization.    Furthermore, also deficient is her evidence that any discriminatory intent triggered Colonial's appointment of Guffey, instead of Graham, to the newly created Wholesaler position.

As the Eleventh Circuit has explained, Graham must show that the disparities between her qualifications and the qualifications of the person who received the promotion, Cary Guffey, were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.*; *see also Ash v. Tysons Foods, Inc.*, ___ U.S. at ____, 126 S.Ct. 1195, 1197-98 (2006) (approving this standard for inferring pretext from superior qualifications).    Graham has not done so.    Graham offers no credible evidence to undermine Green's informed opinion that Guffey was best suited for the position.    More importantly, there is no showing at all that Green based her selection of Guffey on criteria-- whether objective or subjective-- which masks her discriminatory animus.    *See Chapman v. AI Trans.*, 229 F. 3d 1012, 1034 (11th Cir. 2000).

## 2.  Post-termination "Failure to Promote" to new position

In order for Graham to establish a *prima facie* case of discrimination for Colonial's failure to promote her to the newly created position after eliminating hers,[13] she must show that: (1) she is a

---

[13]In deference to the plaintiff's *pro se* status, the court construes liberally her complaint but should not be interpreted as deciding that the complaint states adequately this specific claim of

member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.  *See Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1079, 1089 (11th Cir. 2004).

Here, Colonial proffered a legitimate and non-discriminatory reason: Guffey's superior qualifications.  Thus, the burden shifted to Graham to "meet [the proffered] reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Brooks v. County Comm'n of Jefferson County*, 446 F. 3d 1160, 1163 (11th Cir. 2006).  In other words, to establish pretext, Graham must demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Comm'n of Jefferson County*, 446 F. 3d 1160, 1163 (11th Cir. 2006).

In the context of a promotion:

a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race.  We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where...the reason is one that might motivate a reasonable employer.

*Alexander v. Fulton County*, 207 F. 3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted).  To the extent that Graham grounds her complaint on a separate claim arising from non-selection to the

---

discrimination.

13

newly created Wholesaler position, this claim too must fail for the evidentiary deficiency noted.

## IV.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the *Recommendation of the Magistrate Judge* that --

1.  the **Motion for Summary Judgment of  Defendants The Colonial Bank, N.A. and The Colonial BancGroup, Inc. (Doc. 16) be GRANTED**; and

2.  a Final Judgment be entered against  Plaintiff, Kitty Graham,  and in favor of Defendants, Colonial Bank, N.A., and  The Colonial BancGroup, Inc.

**It is further ORDERED** that the parties file any objections to this Recommendation not later than December 28, 2006.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

14

DONE THIS 15th day of December, 2006.

/s/ Delores R. Boyd

DELORES R. BOYD
United States Magistrate Judge