IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

KITTY GRAHAM )
)
    Plaintiff, )
)
v. ) 2:06-CV-00270-WKW-DRB
)
COLONIAL BANK, et al., )
)
    Defendants. )

**PLAINTIFF KITTY GRAHAM'S RESPONSE IN OBJECTION TO THE RECOMMENDATION OF THE MAGISTRATE JUDGE REGARDING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS COLONIAL BANK, ET AL**

COMES NOW Plaintiff Kitty Graham to file her response in objection to the recommendation of the Magistrate Judge regarding the motion for summary judgment filed by Defendants, Colonial Bank, et al.

## RESPONSE

As instructed in the Recommendation of the Magistrate Judge, Plaintiff (hereinafter referred to as Graham) submits her objections to the specific findings referenced in the Magistrate Judges' Recommendation.

Notable in the Magistrate Judges' Recommendation, and of apparent weight, is the continued presumption that a lengthy and comprehensive restructuring process was initiated in mid-2004 by defendants and continued through 2006. Restructuring did not begin until May, 2005, well after Graham's termination *and* after initial filing of an EEOC action against defendants by Graham. The termination of Rick Peterson in August, 2004 was not part of reorganization, but was due to low production according to previously filed affidavits. Contracting with Huntington Consulting Services was completed in mid-October, 2004 and year end broker meetings to kick off 2005 sales took place the week of November 21, 2004 with a

sales contest cruise to be taken in April, 2005 for all of the producers whose sales met the qualifying goals.

When defendants did initiate restructuring plans in May, 2005, it was with a mandatory meeting of all employees to announce these intentions and to review the process that would be followed. Of significance is the announcement that *it had not yet been determined which positions would be affected* in the restructuring, but determination and announcement of those affected would be done by the end of July, 2005 so that there would be ample notice and time to bid and apply for alternate positions within the Colonial system as well as time off to interview outside the company where necessary. In this instance, defendants followed guidelines that would be typical for a company undergoing a reduction in force and that employed more than 100 people under the WARN Act (Worker Adjustment Retraining and Notification Act)(Exhibit C) by giving potentially affected employees 60 days notice. Graham acknowledges that WARN does not necessarily apply in this situation as Colonial is not a plant or factory, however; the WARN Act serves to provide general guidelines for reduction in force initiatives. Also of primary importance in determining the individuals who will be affected in a reduction in force is the consideration of experience. Graham had more than 25 years in banking and financial services employment and was one of the top producers in Colonial of fixed annuities and insurance sales when she was in the retail branch environment. Her success in sales and her excellent communication skills, along with her superior knowledge of investment and insurance products as well as bank products served to make her an invaluable asset in working with financial consultants and licensed bankers. The listing of employees whose positions were eliminated effective mid-September 2005 (more than 20) is an indicator that reorganization began in May when reorganization plans were announced. It appears that Colonial intends to include every employee terminated since the promotion of Linda Green to Executive Vice

President of Wealth Management as one included in a plan of reorganization as evidenced by the inclusion of Rick Peterson, Susan Guy, Ann Fuller, Terri Meeves and Kitty Graham who were not part of an overall reorganization plan. Should this be allowed, one could assume that all employee terminations in a company are a result of reorganization at some level. As noted in Graham's initial discrimination complaint, she was terminated *without forewarning* and no attempt was made by defendant to place Graham in any other position, despite Graham's repeated inquiries about alternate positions during her exit interview. Rather, Linda Green informed Graham in her exit interview that there was no place for her at Colonial, not even as a teller, or in the Wealth Management Department. Graham contends that a comprehensive review of the jobs posted in Human Resources at the time of her dismissal would reveal there were positions available at Colonial for which she was qualified. Standard procedure in reorganization or reduction in force programs indicates that employees are typically notified in advance and given ample time, *while still employed*, to find other employment, as was the procedure used by Colonial when reorganization was implemented. (See exhibit B) For these reasons, Graham contends that claims of her termination being involved in overall reorganization are a ruse to cover the intentional discrimination against her, particularly in consideration of Graham's length of time in the financial services industry and her superior knowledge and skills relative to the vast array of products available in investments, insurance and banking programs.

    Second, in support of her objection to the Magistrate Judges' Recommendation, Graham submits that it would be impossible to determine the qualifications for a position in view only of the licensing achievements of the candidate. Given Graham's success in sales and her top producer status in the retail bank environment prior to joining the corporate investment/insurance team, one would be compelled to assume the same measure of success would follow when

utilizing her skills to train others to achieve the same level of success. Conversely, Cary Guffey's sales record during his term of service in the retail environment was modest, to say the least, and he had been on the active watch list to provide additional training to get him up to speed. Therefore, if the licensing consideration were removed as a relevant issue with regard to the Regional Sales and Development Wholesaler position, there would be no question as to the superior qualifications of Graham for this position. Defendants' contention that Graham was unqualified for the position of Regional Sales and Development Wholesaler as she had not completed her studies for NASD licensing would indicate that anyone lacking in licensing required in a job description is unqualified for the job. In this case, the vast majority of employees in the Wealth Management division, including Linda Green, would have been considered to be unqualified for their positions. Plaintiff contends that a review of current staffing and their qualifications in comparison to their job descriptions would produce evidence that many still do not have the required licensing outlined in their job descriptions, and following the line of reasoning used by defendants in this case, their employment should be terminated. Colonial's proffered reasons for promoting Guffey instead of Graham are beyond belief and appear to be used as a mask to cover true discriminatory intentions in consideration of the fact that Colonial intentionally did not offer the Regional Sales and Development Wholesaler position to any female who was qualified by reason of licensing and/or sales experience, including plaintiff.

  The attached (Exhibit A) recent job posting by Colonial will support the fact that NASD licensing is not a "must have" prior to acceptance of a position in Wealth Management. In this posting, the applicant is informed they would have four months from the date of hire to obtain requisite licensing. As it is standard practice to allow completion of licensing after acceptance and appointment to a position, defendants should not be allowed to use a licensing issue as a

4

mode of defense in this discrimination claim. Additionally, Graham's experience is misrepresented by Green in an attempt to cover up the true discriminatory actions intended by the termination of Graham's employment. Graham had a working knowledge of NASD products by virtue of her studies for NASD licensing and could easily have taken and passed the required examinations. Health reasons (open heart surgery) prevented Graham from sitting for her previously scheduled NASD exam, and but for this, she would already have achieved licensing from the NASD. The testimony offered by Linda Green regarding NASD licensing qualifications and Graham's personal pursuit of NASD licensing is intended to misdirect the court and is false where Green claims Graham had "no experience whatsoever regarding the sale and marketing of NASD regulated products". Additionally, Green is aware that Graham was never informed that completion of NASD licensing had become a requirement of her position.

Graham has established that Guffey was not more qualified than she for the Regional Sales and Development Wholesaler position, as described in the January 18, 2005 memo sent to senior management by Green, and that she was vastly more qualified by virtue of her experience and responsibilities over the 25 plus years of her career. Graham maintained full lines life insurance licensing in addition to her studies for NASD licensing. Graham is aware that Green's memo of January 18, 2005 does not contain a complete job description of the Regional Sales and Development Wholesaler position, and absent the production of a full job description by defendants, it is assumed that the most comprehensive and important aspects of the position are contained in the memo. Having no other valid reason for termination of Graham, and acting upon the advice of Dave Awbrey, the middle aged male consultant from Huntington Consulting Services whose background mirrors that of Tesoro and Tim Lewis (appointed Regional Sales Development Wholesaler in Florida upon termination of Terri Meeves) in that he was an insurance company wholesaler, and who was known to desire to work with someone of similar

background to himself, plaintiff can reasonably assert that intentional discriminatory purposes were Greens' basis as the reason for her termination. It is without merit that Green is also a member of the protected class as it has already been established that same sex discrimination is recognized by the courts.

IN CONCLUSION, Graham submits that there are a number of genuine factual issues in this case that warrant denial of defendants' motion for summary judgment and that these issues can only be resolved by a fact finder. Graham has not submitted additional affidavits from those who can validate her claims herein as the individuals are still employed by Colonial and plaintiff does not wish to endanger their positions unless and until it would be absolutely necessary during examination at trial. In light of these issues, it seems that the court would be unable to remove all doubt against the defendant and therefore, be unable to grant a Motion for Summary Judgment.

WHEREFORE, PREMISES CONSIDERED Plaintiff Kitty Graham respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Done this 27th day of December, 2006.

_____
Signature of Plaintiff Kitty Graham

PO Box 240597
Eclectic, AL 36024
334-541-3292

Address and Telephone Number of Plaintiff